UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

W.T.M.,

                              Petitioner,

        v.

PAMELA BONDI, et al.,

                              Respondent.

CASE NO. 2:25-cv-02428-RAJ-BAT

**REPORT AND RECOMMENDATION**

Petitioner requests the Court grant 28 U.S.C. § 2241 habeas relief and order Respondents to (1) immediately release him from immigration detention; (2) declare his arrest and detention are unconstitutionally arbitrary and punitive because Respondents were deceptive, applied unreasonable force, failed to follow constitutional procedures, and are indifferent to his serious medical needs; and (3) award reasonable attorney fees and costs. Dkt. 1.

Respondents oppose Petitioner's request contending (1) Petitioner's injuries upon arrest and the manner of his arrest are not cognizable grounds for habeas relief; (2) Petitioner is subject to mandatory immigration detention; and (3) Petitioner receives adequate medical care at the Northwest ICE Processing Center (NWIPC). *See* Dkt. 7.

The Court recommends Petitioner's request for immediate release be **GRANTED** and Respondents be ordered to **RELEASE** Petitioner within 24 hours of the District Judge's order.

REPORT AND RECOMMENDATION - 1

## BACKGROUND

Petitioner is a native and citizen of Mexico who entered the United States at an unknown time of place. Dkt. 9 (December 15, 2025 Deportation Officer declaration). Petitioner obviously has lived in the United States for many years as he has a U.S. citizen spouse and three young children with whom he was living with when arrested.  Dkt. 1. The deportation officer averred Petitioner has an outstanding Multnomah County Oregon warrant for unlawful possession of a firearm and possession of a loaded firearm. However, on January 3, 2026, Petitioner submitted a copy of the judgment entered by the Oregon Court on December 17, 2025 dismissing the charges and recalling the warrant. Dkt. 12 (exhibit D).

Respondents do not dispute Petitioner's allegations regarding the circumstances of his arrest. Petitioner alleges on November 14, 2025, Department of Homeland Security (DHS) Officers disguised as civilian construction crew lured Petitioner from his home using a ruse. When Petitioner emerged from his home, Respondents unleased a dog that mauled Petitioner in front of his family. The DHS Officers did not identify themselves until after Petitioner had been mauled and placed into one of their vehicles. Although Petitioner sustained multiple dog bites and lacerations medical treatment was not provided for nearly two hours. Petitioner's bites and lacerations were eventually stitched at a hospital, and he was also prescribed antibiotics. Petitioner claims his medical care at the NWIPC is "minimal" and his "physical injuries remain inadequately treated."  Dkt. 1 at 7.

Petitioner contends he has been arbitrarily detained in violation of the Fifth Amendment; procedural due process requires he be granted a hearing before an immigration judge to understand and challenge his detention; he should be released because the DHS Officers did not wear body cameras as required and arrested him in violation of the Fourth Amendment using

REPORT AND RECOMMENDATION - 2

shocking tactics; and Respondents have been deliberately indifferent to his medical needs.

medical care. Respondents disagree.

**DISCUSSION**

**A.      Statutory Basis for Detention**

Respondent incorrectly claims Petitioner is mandatorily detained under 8 U.S.C. § 1225(b). It is undisputed Petitioner entered the United States years ago and has lived in the country since. The notice to appear issued by Respondents confirms this by stating Petitioner is "an alien present in the United States," not "an arriving alien" who would be subject to § 1225. *See* Dkt.10 (exhibit D). Accordingly, as 8 U.S.C. § 1226(a), governs Petitioner's detention he is not subject to mandatory § 1225(b) detention but subject to § 1226(a). *See Rodriguez Vasquez v. Bostock,* 2025 WL 2782499 (W.D. Wash. Sept 30, 2025).

**B.      Detention Hearing and Release**

Respondents argue even if § 1226(a) governs, Petitioner is entitled to a bond hearing, not immediate release. On January 10, 2026, Petitioner filed notice an Immigration Judge (IJ) held a bond hearing on January 7, 2026. The IJ indicated he lacked jurisdiction to grant bond because Petitioner is mandatorily detained under § 1225, and if he had jurisdiction Petitioner should be detained as a "serious risk to flee." Dkt.13.

The IJ's order denying release states: "He [Petitioner] failed to establish that he is not a flight risk"; the IJ provided no rationale in support of this finding. *Id.* (attached order). Federal district courts have habeas jurisdiction to review bond hearing determinations for constitutional claims and legal error. *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011). The IJ committed legal error in erroneously finding he lacks jurisdiction because Petitioner is held under § 1225(b).

As to the grounds for denying release, § 1226(a) does not articulate which party bears the

REPORT AND RECOMMENDATION - 3

burden of proof. Due process requires the government to bear the burden of proof for individuals "facing prolonged detention." *Id* at 1203; *see also Ixchop Perez v. McAleenan,* 435 F.Supp.3d 1055, 1062 (N.D. Cal. Jan. 23, 2020). In making a bond decision under § 1226(a), an IJ must consider whether the detainee "is a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." *In re Patel*, 15 I. & N. Dec. 666 (B.I.A. 1976)). An IJ also may consider any number of discretionary factors, including: (1) whether the detainee has a fixed address in the United States; (2) the detainee's length of residence in the United States; (3) the detainee's family ties in the United States, and whether they may entitle the detainee to reside permanently in the United States in the future; (4) the detainee's employment history; (5) the detainee's record of appearance in court; (6) the detainee's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the detainee's history of immigration violations; (8) any attempts by the detainee to flee persecution or otherwise escape authorities; and (9) the detainee's manner of entry to the United States. *Id.*

Here, a constitutional procedural deficiency exists. The IJ concluded Petitioner posed a serious risk to flee but provided no basis for this conclusion. There is thus nothing showing the IJ considered how long Petitioner has lived in the country; his obvious family ties to the country; the fact he was living with his citizen wife and children; his arrest at his residence in front of his family; his employment; the lack of any failure to appear for immigration hearings or immigration violations; his lack of criminal history; and the lack of any evidence showing attempts to flee or escape.

Moreover, the Government has not provided a contemporaneous recording of the bond hearing, and therefore the Court cannot confirm the bond hearing complied with due process. In

REPORT AND RECOMMENDATION - 4

*Singh*, the Ninth Circuit held due process requires the government to provide contemporaneous records for prolonged detention bond hearings.  638 F.3d at 1208. In reaching this conclusion, the court applied the factors articulated in *Matthews v. Eldridge*, 424 U.S. 319 (1976):

> [T]he specific dictates of due process generally require[ ] consideration of three distinct factors:  First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Singh*, 638 F.3d at 1208 (quoting *Eldridge*, 434 U.S. at 335) (alterations in *Singh*). The court determined that the private interest at stake—freedom from prolonged detention—was substantial and that the government's refusal to provide contemporaneous records fundamentally affected that interest. *Id.* The court also determined recording the hearings would provide a minimal additional burden on the government.  *Id.*

Although *Singh* involved a noncitizen who had been detained for a prolonged time period, the Court finds the contemporaneous record requirement applies to the initial bond hearing Petitioner received. Freedom from detention—whether of a short or prolonged duration—is an important interest that "lies at the heart of the liberty that [the Due Process] Clause protects." *Rodriguez v. Robbins*, 804 F.3d 1060, 1066 (9th Cir. 2015) ("*Rodriguez III*"), *rev'd sub nom Jennings v. Rodriguez*, 138 S. Ct. 830 (2018).

As the Ninth Circuit found in *Singh*, the absence of a contemporaneous record may make it impossible for reviewing courts to determine whether the IJ committed legal or constitutional error. *See Singh*, 638 F.3d at 1208. Likewise, as in *Singh*, the burden on the government of providing a contemporaneous record is minimal, particularly given that the government regularly records other bond hearings.

REPORT AND RECOMMENDATION - 5

Weighing the *Eldridge* factors, the Court finds due process requires the release of Petitioner. Release is compelled because Petitioner has a serious interest in being free from detention and the risk of erroneous detention is high as the factual basis to find he is a serious risk to flee is low. The government did not submit a contemporaneous record of the bond hearing. Even if it did, the record contains no facts that establish Petitioner poses flight risk. As one Court has noted, the government's "only apparent interest in detaining Petitioner—which imposes additional fiscal and administrative burdens—is to fulfill an arrest quota of 3,000 immigration arrests per day set by the current administration. *See Quijada Cordoba v. Knight*, 2025 WL 3228945 at * 8 (D. Idaho Nov. 19, 2025) citing *Vasquez Perdomo v. Noem*, 790 F. Supp. 3d 850, 868 (C.D. Cal. 2025). Further in contrast to the lack of evidence showing Petitioner is a flight risk, what is known about him indicates that he is not a flight risk.

And as to the third factor, the government's interest in holding Petitioner without further process is low. *See Perera Jennings,* No. 21-4136, 2021 WL 2400981 at *5 (N.D. Cal., June 11, 2024) (government's interest is in the procedures used to enforce immigration laws and government has no legitimate interest in detaining individuals who are not a danger or a flight risk).

The Court acknowledges that as Petitioner unlawfully entered the country and has no lawful status to remain in the country, § 1226(a) statutorily authorizes detention and does not provide a statutory mechanism for release. *See Demore v. Kim*, 538 U.S. 510, 530 (2003) ("Detention during removal proceedings is a constitutionally permissible part of that process."); *Prieto-Romero v. Clark*, 534 F.3d 1053, 1062 (9th Cir. 2008) ("Section 1226(a) on its face authorizes the detention of [noncitizens] during the removal order review process.").

While § 1226(a) provides no statutory basis for release, due process calls for release in

REPORT AND RECOMMENDATION - 6

cases involving prolonged detention. *See e.g., Zadvydas v. Davis*, 533 U.S. 678 (2001). Petitioner has been detained since November 14, 2025, and at first blush the length of his detention is not so prolonged that he should be ordered immediately released. *See e.g., Zadvydas v. Davis*, 533 U.S. 678 (2001) (Detention exceeding six months impermissible where removal is not reasonably foreseeable). But the *Zadvydas* six month presumption is just that, a presumption and not a prohibition on a request for release before six months has passed. *See e.g., Ndandu v. Noem*, 2026 WL 25848 (S.D. Cal. Jan 5, 2026) (collecting cases).

Here, the Court finds continued detention violates due process because detention has no reasonable relationship to the asserted governmental interest, which in this case is Petitioner's removal. The Court makes this finding as the record shows there is no rationale supporting a finding Petitioner is a flight risk or a danger to the community, and what is known about him cuts against such a finding. Simply ordering Respondents provide another bond hearing does not alter the fact Petitioner is not a flight risk or a danger and should be released. Rather, ordering another bond hearing simply prolongs detention lacking any support. The Court is also mindful that Petitioner will not be released upon the filing of this report and recommendation and his detention is prolonged further pending adoption by the assigned District Judge.

C.      **Conditions of Confinement**

Petitioner contends the Court should order his release because Respondents have provided him minimal medical care and thus have been deliberately indifferent to his medical needs. Dkt. 12. Deliberate indifference to a prisoner's medical needs involves the "unnecessary and wanton infliction of pain" by ignoring a prisoner's serious medical need. *Doty v. County of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994). A claimant plaintiff must prove more than negligence but less than subjective intent– something akin to reckless disregard. *See Gordon v. County of*

REPORT AND RECOMMENDATION - 7

*Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018). Here, Respondents have shown the medical staff have attended to Petitioner's needs and have not ignored his needs or denied treatment. Thus, Petitioner's claim he has received minimal treatment, even if considered negligent, does not set forth a cognizable constitutional claim of deliberate indifference or punitive treatment.

**D.    Violation of Rights During Arrest**

Petitioner unlawfully entered the country and is subject to arrest and detention under § 1226. Respondents use of a ruse to lure him outside of his home, unleashing an attack dog, and applying excessive force in arresting Petitioner does not alter the fact Respondents possessed a statutory basis to detain him. Thus, while Respondents have not denied Petitioner's allegations that they arrested him in an appalling and disturbing way, the Court cannot say those allegations are grounds to release Petitioner from immigration custody. But the Court can say complying with the law does not impose harm or special burdens upon Respondents and they should abide by the law in any interaction they have with Petitioner. *Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983) (an agency "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations").

**CONCLUSION**

For the reasons above, the Court recommends:

1.  **GRANTING** Petitioner's request for immediate release. If this recommendation is adopted, Respondents shall release Petitioner within 24 hours of adoption of the recommendation.

2.  If the Court adopts the recommendation, it is also recommended that reasonable attorney fees and costs be **GRANTED**.

REPORT AND RECOMMENDATION - 8

**OBJECTIONS AND APPEAL**

This Report and Recommendation is not an appealable order.  Therefore, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **January 29, 2026.**  The Clerk shall note the matter for **January 30, 2026**, as ready for the District Judge's consideration if no objection is filed.  If objections are filed, any response is due within 14 days after being served with the objections.  A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served.  The matter will then be ready for the Court's consideration on the date the response is due.  The failure to timely object may affect the right to appeal.

DATED this 15th day of January, 2026.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 9