HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| W.T.M., | Case No. 2:25-cv-02428-RAJ-BAT |
| Petitioner, | ORDER |
| v. | |
| PAMELA BONDI, *et al.*, | |
| Respondents. | |

## I.      INTRODUCTION

THIS MATTER comes before the Court on Petitioner W.T.M.'s Petition for habeas relief, Respondents' Response thereto, the Report and Recommendation of the assigned United States Magistrate Judge, Respondents' Objections to the Report and Recommendation, and Petitioner's Response to Respondents' Objections. Dkt. ## 1, 7, 15, 17, 18. The parties also submitted additional briefing addressing the Report and Recommendation following this Court's order of production dated January 27, 2026. *See* Dkt. ## 19–21. For the reasons stated below, the Court **MODIFIES** the Report and Recommendation as set forth herein and **ORDERS** Respondents to **RELEASE**

ORDER - 1

Petitioner, subject to appropriate supervisory conditions, within 24 hours of the entry of this order. The Court **DENIES** as moot Petitioner's Motion to Expedite. Dkt. # 14.

## II.    BACKGROUND

The Court adopts and incorporates the facts as stated by the Honorable Brian A. Tsuchida in the Report and Recommendation at Dkt. # 15.

## III.    LEGAL STANDARD

A district court has jurisdiction to review a Magistrate Judge's report and recommendation on dispositive matters. *See* Fed. R. Civ. P. 72(b). "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." *Id.* "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The Court reviews *de novo* those portions of the report and recommendation to which specific written objection is made. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

## IV.    DISCUSSION

### A.    Mandatory Detention Under 8 U.S.C. § 1225(b)

The Court agrees with and adopts the Report and Recommendation as to the Magistrate Judge's conclusion that the immigration judge (IJ) committed legal error in finding that Petitioner was mandatorily detained under 8 U.S.C. § 1225(b). Dkt. # 15 at 3.

### B.    Subject Matter Jurisdiction

Respondents' primary objection to the Report and Recommendation is that this Court does not have jurisdiction to review the decision of the immigration judge (IJ) to deny bond, and "improperly sets aside" that decision "based on the purported merits of the decision and specious procedural claims." Dkt. # 17 at 2. 8 U.S.C. § 1226(e) provides

that "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review," and that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole."  It does not, however, deprive federal district courts from their habeas jurisdiction to review bond hearing determinations for constitutional claims and legal error.  *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011).

Here, Petitioner is not challenging the IJ's discretionary judgment.  Rather, he is challenging whether the IJ provided him with a bond hearing that comports with the constitutional due process protections to which he is entitled.  Dkt. # 18 at 5.  In one recent case presenting strikingly similar circumstances, a district court found that a habeas petitioner's challenge to an IJ's bond denial decision was "precisely" the kind of case that is appropriate for judicial review.  *Garcia v. Hyde*, No. 25-CV-585-JJM-PAS, 2025 WL 3466312, at *5 (D.R.I. Dec. 3, 2025).  Like the petitioner here, the petitioner in *Garcia* took "specific issue" with the "IJ's decision to deny him release on bond because [the IJ] relied on [an inactive] arrest warrant in making [the] flight risk determination, despite there being 'no outstanding warrant for his arrest.'"  *Id.*; *see* Dkt. # 13 at 4 ("In determining his decision on bond, IJ relied on the recalled bench warrant.").  Based on the nature of Petitioner's challenge, the Court concludes that Section 1226(e) does not divest it of subject-matter jurisdiction over Petitioner's claim.

C.  **Administrative Exhaustion**

Respondents separately argue that Petitioner should be required to exhaust his administrative remedies before pursuing habeas relief in federal court.  Dkt. ## 17 at 4–5.  On habeas review under 28 U.S.C. § 2241, "[t]he exhaustion requirement is prudential, rather than jurisdictional[.]"  *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th

ORDER - 3

Cir. 2017).  In the Ninth Circuit, courts may require prudential exhaustion when: "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007).  However, even in cases where all three *Puga* factors favor prudential exhaustion, a court may waive the prudential exhaustion requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.'" *Hernandez*, 872 F.3d at 988 (quoting *Laing v. Ashcroft,* 370 F.3d 994, 1000 (9th Cir. 2004)).

        Here, the *Puga* factors do not weigh in favor of requiring prudential exhaustion.  As to the first factor, the Court acknowledges the BIA's general subject-matter expertise in individual immigration bond decisions. *Aden v. Nielsen*, No. C18-1441RSL, 2019 WL 5802013, at *2 (W.D. Wash. Nov. 7, 2019).  However, as discussed, Petitioner here raises a constitutional challenge to the adequacy of his bond hearing, which is better suited to review by the federal courts. *See Scott v. Wamsley*, No. 2:25-CV-1819, 2025 WL 3514304, at *4 (W.D. Wash. Dec. 8, 2025), *reconsideration denied*, No. 2:25-CV-1819, 2026 WL 83971 (W.D. Wash. Jan. 12, 2026) (finding that due process and statutory challenge to continued detention is "fundamentally a question of law").  Accordingly, the first *Puga* factor leans against requiring prudential exhaustion.

        The second *Puga* factor presents a closer question.  Respondents contend that relaxation of the exhaustion requirement will "permit other detainees to directly appeal their alternative bond determinations to federal district court without any further . . . administrative appellate record." Dkt. # 17 at 6.  The Court begins by observing that

ORDER - 4

Petitioner's claim raises a discrete legal question, the resolution of which may "provide concrete guidance for future administrative proceedings." *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1251 (W.D. Wash. 2025). Specifically, this matter raises the question of whether a recalled or inactive bench warrant can ever serve as the sole basis for an IJ's determination that a petitioner is a flight risk and resultant bond denial. This question, once answered by this Court, may actually promote clarity such that future petitioners may not feel the need to "bypass" the administrative process by appealing bond denials to courts in this District, and may "thus reduce the number of future habeas petitions." *Id.* at 1252. On the other hand, unlike *Rodriguez*, this case is not a class action, and the Court acknowledges that judicial resolution of this individual petition of an individualized bond determination is less likely to "provide concrete guidance for a large swath of future administrative proceedings." *Martinez v. Scott*, No. 2:25-CV-01538-TSZ-GJL, 2025 WL 2689844, at *5 (W.D. Wash. Aug. 27, 2025), *report and recommendation adopted*, No. C25-1538 TSZ, 2025 WL 2689066 (W.D. Wash. Sept. 19, 2025). On balance, however, the Court concludes that the second *Puga* factor leans against requiring prudential exhaustion.

As to the third *Puga* factor, Respondents argue that requiring exhaustion will allow the agency to correct its own mistakes and preclude the need for judicial review. Dkt. # 17 at 6. This is not a case, however, in which the BIA's "authority to correct the erroneous factual determinations and evidentiary errors alleged" in the petition justifies requiring administrative exhaustion. *Martinez*, 2025 WL 2689844, at *5 (citing 8 C.F.R. § 1003.1(d)(3)(i)–(ii)). Here, the defect alleged by Petitioner is constitutional in nature, and it is unlikely that appeal to the BIA will permit the agency to correct a factual or evidentiary oversight by the IJ. As such, the third *Puga* factor leans against requiring prudential exhaustion.

Even if the *Puga* factors weighed in favor of requiring prudential exhaustion, the Court concludes that waiver is appropriate under *Laing v. Ashcroft*. Requiring Petitioner to exhaust his administrative remedies "will result in irreparable injury because he will not have a meaningful opportunity to show his entitlement to bond . . . if he is forced to wait for BIA review" of the IJ's decision. *Rodriguez*, 779 F. Supp. 3d at 1253. According to data released by the Executive Office for Immigration Review, the average processing time for bond appeals in 2024 exceeded 200 days. *Rodriguez*, 779 F.Supp.3d at 1248–49. District courts in this Circuit "routinely" waive prudential exhaustion requirements for noncitizens facing prolonged detention while awaiting administrative appeals. *Id.* at 1253–54 (collecting cases). Finally, Petitioner has presented evidence unique to him, that, while not an independent basis for relief, supports a finding that his continued detention pending a potentially months-long BIA appeal of the IJ's bond denial decision would risk continued irreparable harm. *See* Dkt. # 18 at 12 (attesting to Petitioner's serious injuries at time of arrest and ongoing medical needs); *Hernandez*, 872 F.3d at 995 (recognizing irreparable harms imposed on individuals in immigration detention, including "subpar medical and psychiatric care in ICE detention facilities").

For the foregoing reasons, the Court declines to require that Petitioner exhaust his administrative remedies.

**D.    Due Process**

The Report and Recommendation provides that the IJ's bond denial decision was constitutionally procedurally deficient due to the IJ's failure to provide a basis for his conclusion that Petitioner posed a serious risk to flee. Dkt. # 15 at 4. The Magistrate Judge also found that the Government failed to provide a contemporaneous record of the bond hearing. *Id.* at 4–5. Although the contemporaneous record requirement established

by the Ninth Circuit in *Singh v. Holder* applies to detainees facing "prolonged" detention, 638 F.3d at 1208, the Magistrate Judge concluded that the requirement to do so was also applicable "to the initial bond hearing Petitioner received" after less than two months of detention. Dkt. # 15 at 5. Respondents correctly counter that the absence of a contemporaneous record does not, in and of itself, constitute a procedural deficiency. As a court in this District previously observed, applicable case law "does not stand for the proposition that a contemporaneous recording is required for all bond hearings," and Petitioner "was not entitled to a contemporaneous recording at his bond hearing given that he was not held in prolonged detention." *Yong Guo v. Nielson*, No. C18-1557-RSM-BAT, 2019 WL 2515166, at *2 (W.D. Wash. June 18, 2019). Additionally, it is not clear that the procedures required by *Singh*, like the contemporaneous record requirement, are applicable to bond hearings for individuals detained pursuant to § 1226(a) following the Ninth Circuit's decision in *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022). Accordingly, the Court declines to adopt the part of the Report and Recommendation concluding that the contemporaneous record *per se* applies to Petitioner's initial bond hearings.

Even in the absence of a contemporaneous record of Petitioner's bond hearing, however, it is clear from the existing record in this case that the IJ's bond denial was constitutionally deficient, because there are no circumstances in which the IJ could plausibly establish that Petitioner posed a flight risk. *Garcia*, 2025 WL 3466312, at *7 ("the issue is *not* whether this Court believes that the proof establishes that [Petitioner] poses a flight risk. Rather, the question is whether the evidence that the IJ relied on at the bond hearing could—as a matter of law—establish that [Petitioner] posed a flight risk."). The IJ did not provide any reasoning for his finding that Petitioner was "an extreme flight risk." Dkt. # 13 at 8. Following entry of the IJ's form order, Petitioner filed a Notice of

Post-Filing Developments and Supplemental Authority, attaching the IJ's order and representing to the court that, "[i]n determining his decision on bond, IJ relied on the recalled bench warrant." Dkt. # 13 at 4. This representation was not rebutted by Respondents in the Objections to the Report and Recommendation, nor in their Response to this Court's Order dated January 27, 2026. *See* Dkt. ## 18, 20. While a court may rely on an agency's statement that it considered all of the evidence before it, the parties in this case have provided no such declaration or other evidence to that effect. *See, e.g., Herrera v. Mayorkas*, No. C24-1933-JNW-MLP, 2025 WL 2382093, at *7 (W.D. Wash. May 19, 2025), *report and recommendation adopted*, No. C24-1933-JNW-MLP, 2025 WL 2380669 (W.D. Wash. Aug. 15, 2025), and *objections overruled*, No. 2:24-CV-01933-JNW, 2025 WL 2481251 (W.D. Wash. Aug. 28, 2025). Instead, after being afforded an opportunity to produce any document or recording that evidences the Immigration Judge's finding that Petitioner poses a flight risk, Respondents merely redirected the Court to the IJ's form order denying bond and summarily concluding that Petitioner is an "extreme" flight risk. Dkt. # 19–20.

Additionally, Respondents' filing in response to the Court's production order includes a list of evidence submitted by the parties to the IJ for consideration at the bond hearing. Dkt. ## 20-1; 20-2. These lists only underscore this Court's conclusion. The only evidence submitted to the IJ relevant to an adverse flight-risk determination were: (i) Petitioner's I-213 form, reflecting "pending" criminal charges in Multnomah County Circuit Court, Dkt. # 20-2 at 4–7; (ii) Petitioner's Judgment of Dismissal, showing that the aforementioned charges were dismissed on December 17, 2025, Dkt. # 20-1 at 13; and (iii) a court docket showing that Petitioner had no pending criminal charges and no convictions, *id.* This submission, coupled with Petitioner's unrebutted assertion that the IJ relied on the recalled bench warrant in concluding that Petitioner is a flight risk, leaves

the Court with no other choice but to conclude that the recalled warrant was the basis for the IJ's denial of bond. Bench warrants, however, are not by themselves dispositive of flight risk. *See, e.g.*, *Fernandez Aguirre v. Barr*, No. 19-cv-07048 (S.D.N.Y. Sept. 18, 2019).

While, as previously discussed, the Court declines to adopt the Magistrate Judge's express finding that a contemporaneous record of Petitioner's initial bond hearing was required as a matter of law, the Court otherwise adopts the conclusion in the Report and Recommendation that the IJ's denial of bond violated due process under the standard set forth in *Matthews v. Eldridge*, 424 U.S. 319 (1976). The Court specifically observes that continued detention of a petitioner on the basis that he is a "flight risk" solely due to a recalled bench warrant poses a serious risk of erroneous deprivation of liberty, and does not protect any significant government interest.

### E.     Appropriate Remedy

Having concluded that the process afforded to justify Petitioner's detention was constitutionally defective, the Court must now determine the appropriate remedy. Petitioner requests immediate release from ICE custody, while Respondents submit that the Court should instead remand to the immigration court to conduct a bond hearing that comports with due process requirements. Dkt. # 18 at 11; Dkt. # 20 at 2. In this area, "[f]ederal courts have a fair amount of flexibility." *Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005). Under the present circumstances, the Court finds that immediate release subject to reasonable conditions of supervision is appropriate. *See Garcia*, 2025 WL 3466312, at *11 (ordering habeas petitioner's immediate release from custody "[g]iven the due process violations that pervaded his bond hearing," namely, the IJ's reliance on an inactive arrest warrant in denying bond on the basis of flight risk).

## V.   CONCLUSION

For the forgoing reasons, the Court **GRANTS** W.T.M.'s Petition for writ of habeas corpus, Dkt. # 1. The Court **DENIES** as moot Petitioner's Motion to Expedite, Dkt. # 14.

The Court **ORDERS** that Respondents and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them:

(1)  Shall immediately release Petitioner from custody under reasonable conditions of supervision; and

(2)  Shall file with the Court a notice within 2 business days confirming Petitioner's release.

Dated this 30th day of January, 2026.

*Richard A. Jones*
_____
The Honorable Richard A. Jones
United States District Judge